Filed 7/27/26  P. v. Silva CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

DOMENIC DELANO SILVA JR.,

     Defendant and Appellant.

E086016

(Super.Ct.No. FVI1500835)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Christopher P. Beesley and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Dominic Delano Silva, Jr., appeals from the trial court's resentencing decision under Penal Code section 1385, in which the court declined to strike punishment altogether for defendant's use of a firearm in murdering victim Emmitt Burns.[1]  At resentencing, the court struck the firearm enhancement that the jury found true (§ 12022.53, subd. (d) [enhanced term of 25 years to life]), reducing it to a lesser enhancement (§ 12022.53, subd. (c)) carrying a 20-year determinate term, to be followed by defendant's 25-years-to-life term for murder.

Defendant contends the court did not understand its sentencing discretion, and therefore its decision was tainted by legal error.  Specifically, defendant argues the court did not grasp that in assessing whether defendant would pose a danger to the community if released, the court was to consider defendant's dangerousness upon his "future release from prison, not only at the time of sentencing."  (All caps formatting deleted.)  We find no merit in defendant's contention.  We therefore affirm the trial court's resentencing decision.

## BACKGROUND

In 2017, a jury convicted defendant of murder for shooting Burns to death (§ 187, subd. (a)) and found true the enhancement allegation that he personally and intentionally discharged a firearm causing the victim's death (§ 12022.53, subd. (d)).  In January 2018, the trial court sentenced defendant to consecutive indeterminate terms of 25 years to life for the murder and the enhancement, totaling 50 years to life.

---

[1]  All further statutory references are to the Penal Code.

Defendant appealed his conviction and sentence. This court's opinion resolving the appeal sketched the facts of the underlying offense, excerpted as relevant to the present appeal as follows: "In August 2014, police responded to a reported burglary at defendant's residence. Defendant reported that when he had returned home the night before, he noticed his PlayStation and about $1,000 in cash were missing. Defendant gave the officers the PlayStation's serial number, and did not contact the police again." (*People v. Silva* (Nov. 8, 2021, E069863) [nonpub. opn.] (*Silva*).)

"About seven months later, Emmitt Burns was shot and killed. The backpack he was wearing contained a PlayStation. Its serial number matched the serial number of defendant's missing PlayStation. [¶] About 10 minutes after police were dispatched to respond to the shooting, defendant was pulled over by a California Highway Patrol . . . officer for speeding about a mile away from where Burns was shot." (*Silva*, *supra*, E069863.)

The morning after the shooting, the police interviewed and then reinterviewed an eyewitness to the shooting, M.F., who "witnessed the entire incident while standing on her balcony." (*Silva*, *supra*, E069863.) "On the same day while investigating an unrelated matter, [a different detective] encountered defendant." (*Ibid*.) The detective questioned defendant about the shooting, and defendant admitted he knew the victim because they played basketball together when they were kids, and he believed the shooting was gang related. Further investigation uncovered an area where defendant

3

went to shoot his guns with others. Casings found at the shooting area matched those recovered where Burns had been shot outside an apartment complex. (*Ibid.*)

M.F. testified at trial. Her testimony "alone provided substantial evidence to support defendant's conviction." (*Silva*, *supra*, E069863.) "[A]dditional evidence beyond M.F.'s testimony" included "evidence that Burns stole defendant's PlayStation, which provided a motive, particularly in light of his and defendant's gang membership. When asked about the PlayStation, defendant said R.C. stole it and his brother had resolved the dispute, which both R.C. and his brother denied. Defendant gave conflicting statements about his whereabouts at the time before, during, and shortly after the shooting. Finally, there was forensic evidence suggesting that defendant's gun was the murder weapon." (*Silva*, *supra*, E069863.)

In defendant's initial appeal, this court, on transfer from the Supreme Court following its decision in *People v. Lemcke* (2021) 11 Cal.5th 644 concerning eyewitness identification jury instructions (CALCRIM No. 315), affirmed defendant's conviction. (*Silva*, *supra*, E069863.) The parties agreed, however, as did this court, that remand for resentencing was required, including because the Legislature had recently enacted Senate Bill No. 620 (2017-2018 Reg. Sess.). The new legislation gave trial courts discretion under section 1385 to strike or dismiss in the interest of justice previously mandatory firearm enhancements. (See former §§ 12022.5, 12022.53; Stats. 2017, ch. 682, §§ 1, 2; *Silva*, *supra*, E069863.)

On remand, defendant in his resentencing brief and at resentencing requested that the trial court strike his firearm enhancement "in its entirety." Defendant emphasized his difficult childhood in a "particular[ly] rough neighborhood" in Barstow, with his mother "in and out of prison," and that he was "only 20 years old" at the time of the shooting. Defendant acknowledged the court's authority to impose a lesser enhancement if it were "not inclined to strike" all punishment for use of a firearm to commit the killing.

The trial court's tentative contemplated reducing the firearm enhancement penalty to a 20-year determinate term, and the court sought and received argument from both sides whether that "would . . . be an abuse of discretion." The court did the same regarding imposing a 10-year firearm enhancement or, alternatively, leaving the 25-years-to-life enhancement intact. The prosecutor argued against any reduction, emphasizing that "[t]his was a cold-blooded killing that was done while the victim was walking towards his home." The prosecutor also stressed that "if the court finds the dismissal of an enhancement would endanger public safety," that would override any mitigating circumstances.

Defense counsel argued the language and purpose of section 1385 "very much favors the Court dismissing [any firearm] enhancements." Defense counsel suggested the case was not "outrageously more egregious than a regular murder case." Counsel also highlighted that defendant had not "gunned down somebody just because they were of a different race or associated with a different gang or [similar] issues that we see where it's really for no reason," but rather defendant felt "victimized" where someone "started it"

5

and "stole from" him. The court was not persuaded, interjecting that to "rectify[] . . . [a] crime, you call and report a stolen item. You don't use self-help to the extent of murder to remedy the situation."

In conclusion, the court stated it "ha[d]n't heard anything . . . to persuade me to abandon my tentative." The court summarized that it found the "danger to the community" criterion satisfied ("There is a danger to the community") to preclude dismissing the firearm enhancement altogether. Nevertheless, given the length of defendant's reduced sentence ("25-year[s]-to-life plus the 20-year enhancement"), the court concluded: "I don't find [dangerousness] persua[sive] to *not* exercise the discretion that [the Legislature's] change in the law [permitting reduction of firearm enhancement terms] was designed to give." (Italics added.) The court struck the 25-years-to-life firearm enhancement and imposed the 20-year determinate term instead.

## DISCUSSION

Defendant contends the trial court erred by "focusing only on [his] *present* dangerousness." According to defendant, the court thereby committed legal error by failing to consider "whether he would pose a danger when released in the *future*, at the end of an unenhanced sentence," if the court struck the enhancement. As we explain below, the record does not bear out defendant's claim of error. We reach the merits of defendant's contention, despite respondent's claim of forfeiture, because a sentencing choice "based on an erroneous understanding of the law" constitutes legal error requiring

6

remand.  (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1023; see e.g., *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.)

A trial court "may, in the interest of justice pursuant to [s]ection 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."  (§ 12022.53, subd. (h).)  Section 1385 requires the trial court to give great weight to mitigating circumstances in considering whether to dismiss or strike an enhancement, "unless the court finds that dismissal of the enhancement would endanger public safety."  (§ 1385, subd. (c)(2).)  The Legislature has defined " '[e]ndanger public safety' " to mean "there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (*Ibid.*; *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 227 (*Gonzalez*).)  When "strik[ing a] section 12022.53(d) enhancement found true by the jury," the trial court may also "impose a lesser uncharged statutory enhancement instead."  (*People v. Tirado* (2022) 12 Cal.5th 688, 692.)

In *Gonzalez*, the trial court "believed that it was required to decide whether the defendant 'currently at the time of sentencing represent[s] a danger to society.'  Premised on [this] understanding of the proper inquiry, the trial court imposed [section 12022.53's 25-years-to-life] firearm enhancement based on its conclusion that Gonzalez 'presently . . . does represent a danger to society.' "  (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 227.)  The reviewing court explained that this was error because "[t]he plain words of the statute do not support the trial court's singular focus on whether the defendant *currently* poses a danger."  (*Id.* at p.228.)  Instead, the "would endanger" statutory language

7

requires consideration of danger posed, if any, when "the defendant would be released under the revised sentence." (*Id.* at p. 229.)

We review for abuse of discretion a trial court's decision under section 1385 whether to strike a sentence enhancement or not. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) While this standard is "highly deferential" (*ibid.*), "when the record indicates the court misunderstood or was unaware of the scope of its discretionary powers," remand "allow[s] the court to properly exercise its discretion." (*People v. Bolian* (2014) 231 Cal.App.4th 1415, 1421; see *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court' "].)

But "remand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1229.) To the contrary, "error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) A silent record does not establish error because the trial court " ' "is presumed to have been aware of and followed the applicable law." ' " (*Ibid.* [" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged in to support it on matters as to which the record is silent' "].)

Here, unlike in *Gonzalez*, nothing suggests the trial court misapprehended its discretion. The court did not erroneously state the law as was the case in *Gonzalez*. *Gonzalez* predated defendant's sentencing hearing by almost a year, adding weight to our presumption that the trial court was aware of recent authority articulating the correct rule

of law, which the prosecutor's sentencing brief also highlighted.  This silent record alone, devoid of any suggestion of error, requires us to affirm the court's decision.  Moreover, we presume from the reduced firearm enhancement the court imposed that it considered defendant's future dangerousness and concluded it could be mitigated so as not to require the harshest enhanced penalty.  Defendant's lengthy indeterminate murder term, which was not at issue, meant that any enhancement reduction the court contemplated necessarily drew the court to weigh his dangerousness upon release.  The reduced sentence, which the court noted it imposed in deference to the Legislature's ameliorative "change in the law," also undercuts defendant's claim that the court "does not appear to have considered the lack of deterrent effect of long sentences" that, in part, prompted the legislative changes.  (See Stats. 2021, ch. 719, § 1(d)(3), (4); *Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 496.)  For all of these reasons, we find no merit in defendant's claim of error.

## DISPOSITION

The trial court's resentencing decision is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

LEE _____
                                                            J.

We concur:


McKINSTER _____
                Acting P. J.


MILLER _____
                                J.